# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| PATRICIA L. JAMES,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | Case No. 2:18-cv-00885-BNW<br><br>**ORDER** |

This case involves review of an administrative action by the Commissioner of Social Security ("Commissioner") denying Patricia L. James' (Plaintiff's) application for disability insurance benefits under Titles II and XVI of the Social Security Act. The court reviewed Plaintiff's Motion for Reversal and/or Remand (ECF No. 15), filed September 4, 2018, and Defendant's Cross Motion to Affirm and Response to Plaintiff's Motion for Reversal and/or Remand (ECF Nos. 16, 17), filed October 5, 2018. Plaintiff replied on October 22, 2018. (ECF No. 18.) The parties consented to adjudication by a magistrate judge (ECF No. 14), and this matter was referred to the undersigned on May 2, 2019. (ECF No. 21.)

**I.    BACKGROUND**

**A.    Procedural History**

On March 4, 2015, Plaintiff applied for disability insurance benefits and supplemental security income under Titles II and XVI of the Act, alleging an onset date of October 27, 2014. AR[1] 404-415. Plaintiff subsequently amended her onset date to August 15, 2015. AR 130, 161.

---

[1] AR refers to the Administrative Record in this matter. (Notice of Manual Filing (ECF No. 10).)

The Commissioner denied Plaintiff's claims initially and upon reconsideration. AR 310-12, 313-15, 320-24, 325-29. A hearing was held before an Administrative Law Judge (ALJ) on September 27, 2017. AR 156-97. On October 18, 2017, the ALJ issued a decision finding Plaintiff was not disabled. AR 127-44. On October 30, 2017, Plaintiff requested that the Appeals Council review the ALJ's decision. AR 403. The Appeals Council denied this request on March 13, 2018, making the ALJ's decision the Commissioner's final decision. AR 1-7. On May 16, 2018, Plaintiff commenced this action for judicial review under 42 U.S.C. § 405(g). (See ECF No. 1.)

**B.    The ALJ Decision**

The ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920.

At step one, the ALJ determined that Plaintiff did not engage in substantial gainful activity since August 15, 2015. AR 132.

At step two, the ALJ found that Plaintiff had the following severe impairments: cervicalgia, degenerative disc disease of the cervical and lumbar spine, headaches, and mild right carpal tunnel syndrome. *Id.*

At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R., Part 404, Subpt. P, App. 1 (the listings). AR 134.

Next, the ALJ found that Plaintiff retained the residual functional capacity (RFC) to perform light work as defined in 20 CFR §§ 404.1567(b), 416.967(b), consisting of lifting or carrying 20 pounds occasionally and 10 pounds frequently; standing and/or walking for up to six hours in an eight-hour work day; and sitting for up to six hours in an eight-hour workday. The ALJ further found Plaintiff could frequently balance, stoop, kneel, crouch, crawl, or climb ramps or stairs, but she could never climb ropes, ladders, or scaffolds. Due to bilateral upper extremity problems, Plaintiff was limited to frequent reaching with her right upper extremity and occasional overhead reaching with her bilateral upper extremities. The Plaintiff is also not able to perform work at unprotected heights or around dangerous moving machinery. AR 134.

At step four, the ALJ found that Plaintiff could perform past relevant work as a cashier, customer service representative, housekeeper, sales attendant, and worker in general hardware sales. AR 137. Accordingly, the ALJ found that Plaintiff was not disabled from August 15, 2015 through the date of his decision. *Id.*

## II. DISCUSSION

### A. Standard of Review

Administrative decisions in social security disability benefits cases are reviewed under 42 U.S.C. § 405(g); *see Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) states:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides.

42 U.S.C. § 405(g). The court may enter "upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.* The Ninth Circuit reviews a decision affirming, modifying, or reversing a decision of the Commissioner de novo. *See Batson v. Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2004).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *see Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). However, the Commissioner's findings may be set aside if they are based on legal error or not supported by substantial evidence. *See Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). In determining whether the Commissioner's findings are supported by substantial evidence, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's

conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

Under the substantial evidence test, findings must be upheld if supported by inferences reasonably drawn from the record. *Batson*, 359 F.3d at 1193. When the evidence will support more than one rational interpretation, the court must defer to the Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Consequently, the issue before the court is not whether the Commissioner could reasonably have reached a different conclusion, but whether the final decision is supported by substantial evidence. It is incumbent on the ALJ to make specific findings so that the court does not speculate as to the basis of the findings when determining if the Commissioner's decision is supported by substantial evidence. Mere cursory findings of fact without explicit statements as to what portions of the evidence were accepted or rejected are insufficient. *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981). The ALJ's findings "should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based . . . ." *Id.* (citing *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974), cert. denied, 420 U.S. 931 (1975).).

**B.     Disability Evaluation Process**

The individual seeking disability benefits has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). More specifically, the individual must provide "specific medical evidence" in support of his claim for disability. 20 C.F.R. § 404.1514. If the individual establishes an inability to perform his prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled. *See generally* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If at any step the ALJ determines that he can make a finding of disability or nondisability, a determination will be made, and no further evaluation is required. *See* 20 C.F.R. § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). Step one requires the ALJ to determine whether the individual is engaged in substantial gainful activity (SGA). 20 C.F.R. § 404.1520(b). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities usually for pay or profit. *Id.* § 404.1572(a)-(b). If the individual is engaged in SGA, then a finding of "not disabled" is made. *See Barnhart*, 540 U.S. at 24. If the individual is not engaged in SGA, then the analysis proceeds to step two. *See id.* Step two addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits him from performing basic work activities. 20 C.F.R. § 404.1520(c). An impairment or combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work. *Id.* § 404.1521; *see also* SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017); SSR 85-28, 1985 WL 56856 (Jan. 1, 1985).[2] If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of "not disabled" is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to step three.

Step three requires the ALJ to determine whether the individual's impairment or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. If the individual's impairment or combination of impairments meet or equal the criteria of a listing and

---

[2] SSRs constitute the SSA's official interpretation of the statute and regulations. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009); *see also* 20 C.F.R. § 402.35(b)(1). They are entitled to some deference if they are consistent with the Social Security Act and regulations. *Id.* at 1223-24 (finding ALJ erred in disregarding SSR 82-41).

the duration requirement (20 C.F.R. § 404.1509), then a finding of disabled is made. 20 C.F.R. § 404.1520(h). If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to step four.

Before moving to step four, however, the ALJ must first determine the individual's residual functional capacity (RFC), which is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. *See* 20 C.F.R. § 404.1520(e); *see also* SSR 96-8p, 1996 WL 374184 (July 2, 1996). In making this finding, the ALJ must consider all the relevant evidence, such as all symptoms and "the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a)*; see also* SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527, 416.927.

Step four requires the ALJ to determine whether the individual has the RFC to perform his past relevant work (PRW). *See* 20 C.F.R. § 404.1520(f). PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years or 15 years before the date that disability must be established. *See* 20 C.F.R. §§ 404.1560(b), 404.1565(a). In addition, the work must have lasted long enough for the individual to learn the job and perform SGA. *Id.* §§ 404.1560(b), 404.1565(a). If the individual has the RFC to perform his past work, then a finding of "not disabled" is made. *Id.* § 404.1560(b)(3). If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to step five.

The fifth and final step requires the ALJ to determine whether the individual can do any other work considering his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). If he can do other work, then a finding of "not disabled" is made. Although the individual

generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner. The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do. *Yuckert*, 482 U.S. at 141-42.

**C.     Analysis**

    **1.     Plaintiff's Appealed RFC Claim**

        **a.     The Parties' Arguments**

Plaintiff faults the ALJ for failing to properly evaluate the medical evidence in assessing her RFC. (ECF No. 15 at 5.) Importantly, Plaintiff does *not* argue that the RFC is wrong, that it is not supported by substantial evidence, or that the ALJ failed to factor in any medical evidence. Rather, Plaintiff simply argues that the ALJ is not qualified to interpret medical data. (*Id.* at 6.) Plaintiff asserts that "[a]bsent expert assistance, the ALJ could not competently translate the medical evidence in this case into a [RFC] assessment." (ECF No. 18 at 4.) Relatedly, Plaintiff also argues that the ALJ failed to fully and fairly develop the medical record. (ECF No. 15 at 7.) Plaintiff asserts that the ALJ could have utilized medical experts at the hearing or for consultative examinations of the Plaintiff but chose not to, and this was error because he "chose to interpret the raw medical data himself to formulate his RFC assessment." (*Id.*)

The Commissioner argues that it is the ALJ's responsibility, not a doctor's, to determine the Plaintiff's RFC. (ECF No. 16 at 3.) The Commissioner also asserts that ALJs have wide discretion to weigh and reject medical opinions in determining a claimant's RFC. (*Id.*) Additionally, the Commissioner argues that the ALJ's duty to develop the record is triggered only when evidence is ambiguous or the record is inadequate to allow for a proper evaluation of the evidence. (*Id.* at 6.) The Commissioner asserts that neither of these conditions were present in the instant case, and even if they were, Plaintiff fails to identify and challenge them. (*Id.*)

### b. The ALJ's Responsibility to Determine a Claimant's RFC and Develop the Record

At step four of the sequential evaluation, the ALJ must determine the claimant's RFC. 20 C.F.R. § 416.920(a)(4)(iv). It is well settled that it is the ALJ, and not a doctor's, responsibility to determine a claimant's RFC. *See* 20 C.F.R. § 404.1546(c) (ALJ responsible for assessing RFC); *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC."); *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."). Further, where evidence is subject to more than one rational interpretation, the ALJ's conclusion will be upheld. *Burch*, 400 F.3d at 679. The court will only disturb the ALJ's findings if they are not supported by substantial evidence. *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

An ALJ also has an independent duty to fully and fairly develop the record. *Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir. 2001). But this duty to develop the record is triggered only if the evidence is ambiguous or the record is inadequate to make a decision. *Id.*; *Armstrong v. Comm'r of Soc. Sec.,* 160 F.3d 587, 589–90 (9th Cir. 1998). In such a case, the ALJ may develop the record in several ways, including by subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow for supplementation of the record. *Tonapetyan,* 242 F.3d at 1150; *see also* 20 C.F.R. § 404.1512.

### c. Whether the ALJ Erred in Determining Plaintiff's RFC

Here, Plaintiff argues that the ALJ is not qualified to interpret medical data in functional terms and that his RFC assessment is nothing more than his lay opinion. (ECF No. 15 at 6*; see also* ECF No. 18 at 4 (ALJ cannot translate medical evidence into RFC without expert assistance).) Relatedly, Plaintiff also argues that the ALJ failed to fully and fairly develop the medical record. (ECF No. 15 at 7.)

As a purely legal matter, Plaintiff is incorrect that the ALJ cannot determine Plaintiff's RFC. *See* 20 C.F.R. § 404.1546(c) (ALJ responsible for assessing RFC); *Vertigan*, 260 F.3d at

1049 ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity.").³

As a factual matter, Plaintiff makes no attempt whatsoever to flesh out an argument that the ALJ erred, in this case, in determining Plaintiff's RFC without further expert assistance. Plaintiff neither points to any ambiguities in the record that required clarification nor attempts to show that the record was inadequate to make a decision. *See Tonapetyan*, 242 F.3d at 1150 (ALJ's duty to develop the record triggered when there are ambiguities or the record needs clarification to make a decision).

The court "cannot manufacture arguments for" Plaintiff. *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (internal quotations omitted). Rather, the court will "review only issues which are argued specifically and distinctly." *Id.* (briefing is not an exercise in issue spotting). When a claim of error is not argued and explained, the argument is waived. *Id.* at 929-30 (holding that party's argument was waived because the party made only a "bold assertion" of error, with "little if any analysis to assist the court in evaluating its legal challenge"); *see also Hibbs v. Dep't of Human Res.,* 273 F.3d 844, 873 n.34 (9th Cir. 2001) (finding an allegation of error was "too undeveloped to be capable of assessment"). "It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997).

Because Plaintiff did not flesh out any reasons why the ALJ required further expert assistance to determine Plaintiff's RFC, the court cannot find that the ALJ erred in determining Plaintiff's RFC.

### 2. Plaintiff's Appealed Symptom Claims

#### a. The Parties' Arguments

Plaintiff faults the ALJ for failing to rely on clear and convincing reasons supported by substantial evidence in discrediting her symptom claims. (ECF No. 15 at 7-10.) Plaintiff argues

---

³ Oddly, Plaintiff cites *Vertigan* and acknowledges that the it is the ALJ's responsibility to determine Plaintiff's RFC. (ECF No. 15 at 6.)

that the ALJ merely summarized the medical evidence and stated that her symptom claims were not "entirely consistent with the medical evidence and other evidence in the record." (*Id.*) Plaintiff asserts that this is error and moves the court to remand for an award of immediate benefits or, in the alternative, a correction of legal errors. (*Id.* at 10-11.)

The Commissioner responds by arguing that the ALJ properly evaluated Plaintiff's subjective complaints of pain. (ECF No. 16 at 7-10.) The Commissioner acknowledges that the ALJ may not reject a plaintiff's symptom claims based solely on a lack of substantiation in the medical evidence. (*Id.* at 8.) The Commissioner points out, however, that in this case, the ALJ also discredited Plaintiff's symptom claims based on inconsistencies between these claims and her conservative and effective treatment and daily activities. (*Id.* at 9-10.) Accordingly, the Commissioner argues that the ALJ gave clear and convincing reasons (supported by substantial evidence) for discrediting Plaintiff's symptom claims. (*Id.* at 10.)

Plaintiff reiterates the arguments from her opening brief in her reply brief. (*See* ECF No. 18.) She also responds to the Commissioner's argument that the ALJ discredited Plaintiff's symptom claims based on inconsistencies between these claims and her conservative and effective treatment and daily activities. Regarding the nature of her treatment, Plaintiff argues that "[a]lthough the ALJ cited to [her] treatment regimen, he did not cite this as a reason to support his finding." (*Id.* at 6.) Regarding her activities of daily living, Plaintiff asserts that "the ALJ could have addressed this at the hearing. The ALJ is not a mere referee but an active participant in the inquisitorial process." (*Id.* at 7.)

**b.     When Symptom Claims May Be Rejected**

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (internal quotation marks omitted). "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some

degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *Thomas*, 278 F.3d at 958 ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.").

In making an adverse credibility determination, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

The court is constrained to affirming the ALJ decision on a ground that the ALJ invoked in making his/her decision. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *Stout*, 454 F.3d at 1054. The court cannot affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

        **c.**        **Whether the ALJ Erred in Rejecting Plaintiff's Symptom Claims**

Here, Plaintiff argues that the ALJ erred by merely asserting that her symptom claims were not "entirely consistent with the medical evidence and other evidence in the record" and summarizing the medical evidence. (ECF No. 15 at 7-10.) The Commissioner responds that the ALJ also rejected Plaintiff's symptom claims based on her conservative and effective treatment and inconsistencies between her alleged symptoms and daily activities. (ECF No. 16 at 9-10.) Plaintiff responds by arguing that "[a]lthough the ALJ cited to [her] treatment regimen, he did not

1 cite this as a reason" to discredit her symptom claims. (ECF No. 18 at 6.) Plaintiff also seems to suggest that the ALJ erred by not addressing inconsistencies between her activities of daily living and allegedly disabling symptoms at the hearing. (*Id.* at 7.) The court will address these arguments in order.

First, Plaintiff faults the ALJ for making a boilerplate statement that Plaintiff's symptom claims are not entirely consistent with the evidence in the record, asserting that this "boilerplate rationale is not legally sufficient." (*Id.* at 7.) Had this statement been the only statement the ALJ made about Plaintiff's credibility, Plaintiff would likely be correct that this would be insufficient. However, since the ALJ explained its reasons for discrediting Plaintiff's symptom claims (as discussed in more detail below), it was not error for the ALJ to provide a succinct sentence conveying his conclusion.

Second, Plaintiff faults the ALJ for summarizing the medical evidence and allegedly rejecting Plaintiff's symptoms claims because they were not sufficiently supported by objective medical evidence in the record. (ECF No. 15 at 9-10.) Had the ALJ rejected Plaintiff's symptom claims based solely on this ground, this may also have been error. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of symptoms alleged is not supported by objective medical evidence); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991) (same); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989) (same). Again, however, the ALJ provided additional reasons for finding Plaintiff not entirely credible. And because objective medical evidence is a relevant factor in determining the severity of a claimant's symptoms and their disabling effects, it was not error for the ALJ to consider this. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

Third, the Commissioner argues that the ALJ properly discredited Plaintiff's symptom claims based on the conservative and effective nature of her treatment. (ECF No. 16 at 9.) Evidence of "conservative treatment" is sufficient to discount a claimant's testimony regarding the severity of an impairment. *Parra v. Astrue*, 481 F.3d 742 (9th Cir. 2007). Plaintiff does not seem to disagree with the law on this point but asserts that "[a]lthough the ALJ cited to [her]

treatment regimen, he did not cite this as a reason" to discredit her symptom claims. (ECF No. 18 at 6.)

The ALJ's decision does not contain a concise sentence explaining that he found Plaintiff's symptom claims not entirely credible based on the conservative and effective nature of her treatment. *See* AR 127-144. However, "[e]ven when an agency explains its decision with less than ideal clarity, we must uphold it if the agency's path may reasonably be discerned." *Molina*, 674 F.3d at 1121 (internal quotations omitted). Here, the ALJ wrote that he considered Plaintiff's "symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . . ." AR 134. He then went on to discuss the legal standard for evaluating a claimant's symptom claims, Plaintiff's daily activities, Plaintiff's medical records and treatment, and Plaintiff's symptom testimony. AR 135-137. Following this, the ALJ concluded that, "[a]fter careful consideration of the evidence, I find that [Plaintiff's] . . . statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR 137. Accordingly, the court can reasonably discern from the ALJ's decision that he considered and rejected Plaintiff's symptom claims, in part, because of the conservative and effective nature of Plaintiff's treatment. The court rejects Plaintiff's argument to the contrary.

Fourth and finally, the Commissioner argues that the ALJ properly discredited Plaintiff's symptom claims based on inconsistencies between her symptom claims and her daily activities. (ECF No. 16 at 9-10.) The ALJ may consider a claimant's activities that are inconsistent with reported symptoms. *Rollins*, 261 F.3d at 857. If a claimant can spend a substantial part of the day engaged in exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms. *Fair*, 885 F.2d at 603; *Molina*, 674 F.3d at 1113. "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities

"contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13 (internal quotations and citations omitted).

Plaintiff neither takes issue with the law on this point nor denies the inconsistencies between Plaintiff's claims and her activities of daily living. (*See* ECF No. 18.) Rather, Plaintiff seems to suggest the ALJ erred by not addressing these inconsistencies at the hearing. (*Id.* at 7 ("As to inconsistencies between [Plaintiff's] testimony and conduct, [Plaintiff] maintains that the ALJ could have addressed this at the hearing. The ALJ is a not a mere referee but an active participant in the inquisitorial process.").) Plaintiff does not cite any authority, however, for the proposition that an ALJ must inquire into inconsistencies between a claimant's symptom claims and her daily activities at the hearing and/or that a failure to do so is error. Plaintiff cites *Tonapetyan*, 242 F.3d at 1150 and *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983) but neither stand for this proposition. Accordingly, the court cannot find that the ALJ erred in rejecting Plaintiff's symptom claims, in part, based on inconsistencies between these claims and her daily activities.

Thus, Plaintiff failed to establish that the ALJ erred in rejecting her symptom claims. And, even if the ALJ had erred with respect to one of the reasons given for discrediting Plaintiff's symptom claims (which the court does not find), this error would be harmless, as the ALJ provided other valid reasons for discrediting Plaintiff's symptom claims. *See Carmickle*, 533 F.3d at 1162-63; *Molina*, 674 F.3d at 1115 ("[S]everal of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record."); *Batson*, 359 F.3d at 1197 (holding that any error the ALJ committed in asserting one impermissible reason for claimant's lack of credibility did not negate the validity of the ALJ's ultimate conclusion that the claimant's testimony was not credible).

### III. CONCLUSION AND ORDER

Accordingly, IT IS THEREFORE ORDERED that Plaintiff's Motion for Reversal and/or Remand (ECF No. 15) is DENIED.

IT IS FURTHER ORDERED that the Commissioner's Cross Motion to Affirm and Response to Plaintiff's Motion for Reversal and/or Remand (ECF Nos. 16, 17) is GRANTED.

DATED: October 29, 2019

_____
BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE